1  STEPHEN YAGMAN
2  723 Ocean Front Walk
   Venice, California 90291-3212
3  (310) 452-3200

4  Presented on behalf of
   Stephen Yagman
5

6  ☞ **ORIGINAL**

7

8                UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                    WESTERN DIVISION

11

12  | STEPHEN YAGMAN, | No. CV-12-07908-GW(SHx) |

13  | Plaintiff, | |
    | v. | **THIRD AMENDED COMPLAINT** |
14  | | (03-25-13 order, dkt. 93) |
    | DALE KRISTOPHER GALIPO, | (03-27-13) |
15  | MARGARET EICHENLAUB, | |
    | DAVID EICHENLAUB, RAYMOND | |
16  | GRIFFITH FORTNER, ROBERT | **JURY DEMAND** |
    | EDWARD KALUNIAN, JOHN | |
17  | FOSTER KRATTLI, , ROGER | |
    | HAROLD GRANBO, JR., EDWIN | Judge George H. Wu |
18  | ARTHUR LEWIS, GARY YOSHIO | |
    | TANAKA, DENNIS MICHAEL | |
19  | GONZALES,  LAWRENCE TREVOR | |
    | GRIMM, JR., DAVID JAMES | |
20  | WILSON, MANNING & KASS, | |
    | ELLROD, RAMIREZ, TRESTER | |
21  | LLP, MANNING & MARDER, KASS | |
    | ELLROD RAMIREZ LLP, LEROY | |
22  | DAVID BACA, GLORIA MOLINA, | |
    | MARK RIDLEY-THOMAS, ZEV | |
23  | YAROSLAVSKY, DONALD | |
    | KNABE, MICHAEL D. | |
24  | ANTONOVICH and UNKNOWN | |
    | NAMED DEFENDANTS NOS. 1-20, | |
25  | | |
    | Defendants. | |
26

27

28

                              1

1    Plaintiff amends his second amended complaint, pursuant to F.R. Civ. P.

2    Rule 15(a)(1)(A) ("A party may amend its pleading once as a matter of course

3    within: (A) 21 days after serving it[]"), and makes the following allegations, on

4    information and belief, in support of his amended second amended complaint.

5                            **JURISDICTION AND VENUE**

6    1.  Plaintiff and defendants are citizens of different states, to wit: plaintiff is

7    a citizen of New York, and defendants, each and all, are citizens of states other

8    than New York, including California and Pennsylvania, therefore this court has

9    jurisdiction pursuant to 28 U.S.C. § 1332 (diversity jurisdiction), since the matter

10   in controversy exceeds the sum or value of $75,000, exclusive of interest and

11   costs; this court also has jurisdiction pursuant to 28 U.S.C. § 1367 of the state

12   claims; this court has jurisdiction pursuant to 28 U.S.C. § 1331 of the federal

13   claims made under 42 U.S.C. § 1983 and 18 U.S.C. § 1961, *et seq*.  Defendants,

14   other than the Eichenlaubs, systematically do business in California and the claims

15   arose in California, and in the federal court Central District of California, and the

16   Eichenlaubs engaged in case-specific conduct in California on which the claims

17   against them are based.

18   2. Because defendants do business in California and all of the matters that

19   are the basis for this action occurred in Los Angeles County, therefore, venue lies

20   in the United States District Court for the Central District of California, and in its

21   Western Division, pursuant to 28 U.S.C. § 1391.

22                                 **THE PARTIES**

23   3. Plaintiff was an attorney who performed legal services for the

24   Eichenlaubs in the action entitled *Eichenlaub v. Baca*, 06-CV-06979-GW(CTx)

25   ("the underlying action"), in the United States District Court for the Central

26   District of California, and also is the assignee of his prior law firm, Yagman &

27   Yagman & Reichmann, who had a retainer contract with the Eichenlaubs, and

28   defendants are (A) the Eichenlaubs, (B) a lawyer who performed legal services for

the plaintiffs in the underlying action (Galipo), (C) a defendant in the underlying action (Baca), (D) lawyers who defended the underlying action (Grimm, Lewis, Granbo, Gonzales, and Tanaka[1]) and/or who supervised lawyers who defended the underlying action (Fortner, Kalunian, Krattli, and Granbo), (E) a law firm whose lawyers defended the underlying action and its successor (the Manning firms), and (F) the members of the Los Angeles County Board of Supervisors who approved the settlement in the underlying action and who approved of the payment of the settlement funds to Galipo and the Eichenlaubs (Molina, Ridley-Thomas, Yaroslavsky, Knabe, and Antonovich). Unknown Named Defendants 1-20, are persons and/or entities whose true names presently are unknown and who engaged in some conduct that is culpable with respect to plaintiff, as set forth hereinbelow.

## ALLEGATIONS COMMON TO EACH COUNT

4. In or about October 2006, the Eichenlaubs entered into a written retainer agreement with Yagman & Yagman & Reichmann and with plaintiff, under whose provisions they agreed to pay him and his then-law firm for legal services to be rendered in the underlying action, contingent upon the Eichenlaubs entitlement to recover monies in that action.

5. The Eichenlaubs, and hence Galipo, were provided a fully-executed copy of that retainer agreement.

6. The Eichenlaubs possess and/or control their copy of that retainer agreement.

---

[1] So far as plaintiff presently can ascertain, at least the following-named defendants all had their names on papers filed with this court: Galipo, Grimm, Lewis, Gonzales, Tanaka, Fortner, and the Marder law firms, Fornter, Kalunian, and Krattli each and all supervised Granbo, Lewis, Gonzales, and Tanaka, and Granbo specifically supervised each and all Lewis, Gonzales, Tanaka, and generally supervised Grimm and the Marder firms.

7.  The underlying action was filed by plaintiff and his prior law firm on behalf of the Eichenlaubs on November 1, 2006.

8.  On or about April 9, 2007, plaintiff and his prior law firm were ordered substituted out of the underlying action and defendant Galipo was ordered substituted into that action as counsel for the Eichenlaubs.

9.  On April 12, 2007, plaintiff and his prior law firm filed a lien for costs and attorneys' fees in the underlying action, it was served on Galipo and on all defense counsel, and was docketed on April 13, 2007.  All legal counsel in the underlying action had notice of the lien.

10.  At some unknown date after April 13, 2007, the action was settled.

11.  The United States mails and/or wires and/or instrumentalities of interstate commerce were used to negotiate and/or to effectuate the settlement of the prior action, the payment of the settlement funds, and the distribution and/or deposit of the settlement funds.

12.  On or about October 16, 2009, the action was ordered dismissed based on a settlement.

13.  The settlement instrument was collected and negotiated through a bank or banks and the settlement proceeds were collected and disbursed by a bank or banks, using instrumentalities of interstate commerce.

14.  No notice of the settlement or dismissal of the action should have been, but never was, provided to Yagman & Yagman & Reichmann and plaintiff by any defendant and the settlement was concealed from Yagman & Yagman & Reichmann and plaintiff, as were the various transfers of the settlement funds, all done without honoring a contractual lien held by Yagman & Yagman & Reichmann, and now by plaintiff, as to attorneys' fees and costs due.

15.  At some unknown time, defendants paid the settlement sum to defendants Galipo and the Eichenlaubs.

4

16. At some unknown time Galipo paid a portion of the settlement funds to the Eichenlaubs.

17. All defendants had a duty to honor the lien and not to ignore the lien, but no defendant honored the lien and all defendants ignored the lien.

18. Defendants other than Galipo and the Eichenlaubs fraudulently conveyed and transferred or caused to be conveyed and transferred to Galipo and to the Eichenlaubs money that rightfully and legally was Yagman & Yagman & Reichmann's, and hence plaintiff's, and defendants thereby engaged in a theft and conversion of that money.

19. No defendant paid to Yagman & Yagman & Reichmann any fees and some costs due under the lien.

20. Galipo and the Eichenlaubs stole and converted plaintiff's property and attempted to defraud Yagman & Yagman & Reichmann, and hence plaintiff, of attorneys' fees and some costs.

21. Plaintiff attempted to obtain his fees and costs from Galipo, Grimm, and Granbo, but these defendants chose to ignore plaintiff's request.

22. Plaintiff is the sole legal owner of the contractual and lien rights previously owned by his prior law firm.[2]

23. From March 31, 2008 until November 8, 2010 plaintiff continuously was incarcerated for a term of less than life imprisonment.

24. Plaintiff duly complied with the Government Claims Act by filing a tort claim with the County of Los Angeles and also is excepted and excused from complying with that Act, pursuant to Cal. Gov't Code § 950.4, because plaintiff did not know or have reason to know, within the period for presentation of a claim

---

[2] For clarity, whenever the word "plaintiff" is used, it refers to either the prior owner of the contractual and lien rights and to plaintiff, who now owns those rights.

5

to the public entity, that the injuries complained of herein were caused at all or were caused by acts or omissions of the public entity or its employees, in the scope of their employments as public employees.

25.  All acts and/or omissions perpetrated by each defendant were engaged in fraudulently, coercively, maliciously, callously, oppressively, wantonly, recklessly, with deliberate indifference to the rights allegedly violated, despicably, and with evil motive and/or intent, in disregard of the rights of plaintiff.

26.  The terms of the retainer agreement entered into on November 1, 2006 among Yagman & Yagman & Reichmann and Margaret and David Eichenlaub, insofar as relevant and as set forth in that agreement *in haec verba*, are: "In the event this agreement is terminated before any recovery is obtained or received, and the client obtains a recovery at a later time, the client then shall be indebted to the attorneys as follows:  the client's fee shall be $500.00 per hour times the number of hours expended by the attorneys on the client's behalf[]" and "The client hereby grants a charging lien to the attorneys on the client's claim to be prosecuted under the terms of this agreement, and the amount of said lien shall be the amount of the attorneys' fees and costs determined under this agreement."

27.  Yagman & Yagman & Reichmann ceased to exist before this action was filed.

28.  After Yagman & Yagman & Reichmann ceased to exist and before this action was filed, Yagman & Yagman & Reichmann assigned all of its rights in the attorneys' fees and costs under its retainer agreement with the Eichenlaub defendants to is former partner, Stephen Yagman.

29. Each and every allegation of each and every averment of this complaint is incorporated herein by this reference in each and every other allegation of this complaint.

//

## COUNT 1

### (Breach of contract, against the Eichenlaubs only)

30. The Eichenlaubs materially breached the retainer contract they had with plaintiff and his prior law firm by failing and refusing to pay costs and fees as warranted by the contract and by the lien created by that contract.

## COUNT 2

### (Inducing breach of contract, against Galipo only)

31. By his actions, Galipo induced the Eichenlaubs to breach their retainer contract with plaintiff.

## COUNT 3

### (Quantum meruit against the Eichenlaubs)

32. The Eichenlaubs are indebted to plaintiff for the legal services rendered based on *quantum meruit.*

## COUNT 4

### (Constructive trust against the Eichenlaubs and Galipo only)

33. The Eichenlaubs and Galipo are liable to plaintiff for a constructive trust over that part of the settlement funds due to plaintiff but stolen by Galipo and the Eichenlaubs.

34. The thing over which the constructive trust is sought is the sum of money to which plaintiff is entitled under both the contract with the Eichenlaub defendants and pursuant to the lien.

35. By virtue of the contract and/or the lien and the assignment to the plaintiff of the rights under each of them, plaintiff has a right to possess that thing.

36. Defendants Eichenlaub and Galipo wrongfully acquired possession of that thing by receiving it from other defendants as part of the settlement of the underlying action, not giving it to Yagman & Yagman & Reichmann or plaintiff, and wrongfully keeping it.

## COUNT 5

### (Conversion, against all defendants)

37. The Eichenlaubs and Galipo wrongfully exercised and continue to exercise dominion over money due to plaintiff.

38. Plaintiff owns and has a right to possession of that money.

39. The Eichenlaubs' and Galipo's disposition of that money is inconsistent with plaintiff's right to that money.

40. Plaintiff has been and continues to be harmed by the Eichenlaubs' and Galipo's conversion of plaintiff's money.

41. By engaging in all of the conduct alleged in this complaint, by paying to the Eichenlaubs and Galipo the settlement instrument and not listing Yagman & Yagman & Reichmann as a payee on that instrument, and by the Eichenlaubs and Galipo keeping and not paying to Yagman & Yagman & Reichmann its share of the settlement funds, and by not honoring and paying the lien, all defendants engaged in conversion of the monies due under both the contract and the lien.

42. Plaintiff owns the contract and lien rights because they duly were assigned to plaintiff.

43.-46. Reserved.

## COUNT 6

### (Tortious interference with contractual relations, against all defendants, except the Eichenlaubs)

47. Plaintiff stands in the shoes of the firm who had a valid and existing contract with the Eichenlaubs, all defendants had knowledge of the contract, intended to induce its breach, caused its breach, the contract in fact was breached by the Eichenlaubs, the breach was caused by all defendants unjustified and wrongful conduct, and damages were suffered as a result. The relevant contract terms are set forth hereinabove and are incorporated herein by this reference. The

legal effect of the contract's terms is that Yagman & Yagman & Reichmann, and hence plaintiff, were and are entitled to the fees whose theft are the subject of this action.

### COUNT 7

(Interference with prospective economic advantage, against all defendants)

48.  Plaintiff stands in the shoes of the firm who had a valid and existing contract with the Eichenlaubs, all defendants had knowledge of the contract, intended to induce its breach, caused its breach, the contract in fact was breached by the Eichenlaubs, the breach was caused by all defendants unjustified and wrongful conduct, and damages were suffered as a result.  The relevant contract terms are set forth hereinabove and are incorporated herein by this reference.  The legal effect of the contract's terms is that Yagman & Yagman & Reichmann, and hence plaintiff, were and are entitled to the fees whose theft are the subject of this action.

49.  All defendants participated and continue to participate in the breach of the Eichenlaubs breaching of their contract with plaintiff and his prior law firm by failing to discharge their legal duty to pay their prior counsel's costs incurred and attorneys' fees, and thereby interfered with plaintiff's and his prior law firm's prospective economic advantage.

50.  There was a valid and existing contract with the Eichenlaubs, all defendants had knowledge of this contract, all defendants committed intentional and unjustified acts designed and intended to interfere with or disrupt the contract, there was actual interference with and disruption of the relationship, and this caused harm and damage.

51-58.  Reserved.

//

//

## COUNT 8

(Breach of fiduciary duty, against the Eichenlaubs and Galipo)

59. The Eichenlaubs and Galipo, as, respectively, plaintiff's former clients and plaintiff's successor as counsel for the Eichenlaubs, had a fiduciary duty to plaintiff to protect plaintiff's interest in any settlement funds that would be derived from the underling action.

60. By taking all of the settlement funds from the underlying action and failing either to notify plaintiff of this or to pay the funds due to plaintiff to plaintiff, the Eichenlaubs and Galipo breached their fiduciary duties to plaintiff.

61. By reason of the Eichenlaubs' and Galipo's actions in this regard, the Eichenlaubs' and Galipo's breaches off their fiduciary duties proximately caused damage to plaintiff.

## COUNT 9

(Misappropriation of money, against the Eichenlaubs and Galipo)

62. The Eichenlaubs and Galipo misappropriated that portion of the settlement funds paid by the defendants in the underlying action that were due to plaintiff.

## COUNT 10

(Money had and received against the Eichenlaubs and Galipo)

63. The Eichenlaubs and Galipo both were indebted to plaintiff in the sum of the attorneys' fees due to plaintiff for money had and received by them for the use of plaintiff, because the Eichenlaubs and Galipo received money which belonged to plaintiff and which in equity and good conscience should have been, and should be, paid over to plaintiff.

64. The Eichenlaubs and Galipo misappropriated the proceeds of the settlement that were due to plaintiff and therefore are liable to plaintiff for money had and received.

1   65.-72.  Reserved.

## COUNT 11

(Fraudulent conveyance, against all defendants)

73.  By transferring the settlement funds to Galipo and the Eichenlaubs, all e
defendants participated in a fraudulent conveyance of money rightfully belonging
to plaintiff, and this was not a simple failure to pay money against there was a
recorded lien because it was transferred with the specific intent to commit fraud
and constituted engaging in criminal conduct, as set forth hereinbelow in the
RICO count.

74.  The fraudulent conveyance consisted of the transfer by defendants other
than Galipo and the Eichenlaubs, and the participation by receipt by Galipo and
the Eichenlaubs, of property – that portion of the settlement funds due to Yagman
& Yagman & Reichmann, and hence to plaintiff – that was undertaken with the
intent to prevent Yagman & Yagman & Reichmann, and hence plaintiff, from
reaching that portion of the settlement funds to satisfy Yagman & Yagman &
Reichmann's claim, and the fraudulent conveyance so far has succeeded, because
Galipo and the Eichenlaubs, who received the fraudulent transfer continue to
retain the portion of the settlement funds due to Yagman & Yagman &
Reichmann, and hence to plaintiff.

75. Defendant Galipo fraudulently transferred the portion of the settlement
funds due to Yagman & Yagman & Reichmann, and hence to plaintiff, to the
Eichenlaubs, and undertook that fraudulent transfer with the intent to prevent
Yagman & Yagman & Reichmann from reaching that portion of the settlement
funds to satisfy Yagman & Yagman & Reichmann's claim, and, so far, he has
succeeded, because the Eichenlaubs, who received the fraudulent transfer continue
to retain the portion of the settlement funds due to Yagman & Yagman &
Reichmann, and hence to plaintiff.

76. The fraudulent transfers, of which there was more than one, were effectuated both by mail and by interstate transfers by mail and/or by wire.

## COUNT 12

(Obtaining money by false pretenses against the Eichenlaubs and Galipo)

77. The Eichenlaubs and Galipo devised and/or intended to devise a scheme or artifice to defraud or for obtaining money, plaintiff's share of the settlement funds, by means of false or fraudulent pretenses or representations and to take that money, and for Galipo to give away, distribute, and/or supply that money to himself and to the Eichenlaubs, and in doing so they placed in a post office or authorized depository for mail, the money, to be sent or delivered by the postal service or by a private or commercial interstate carrier, and took and/or received the money

78. The Eichenlaubs and Galipo knowingly caused to be delivered by mail the money described in the foregoing averment.

## COUNT 13

(Use of mail or facility of interstate commerce with intent to distribute proceeds of unlawful activity, against all defendants)

79. All defendants used the mail and/or facilities of interstate commerce with the intent to distribute the proceeds of the unlawful activity of stealing plaintiff's share of the settlement proceeds.

80. All defendants used the mail and/or facilities of interstate commerce to otherwise promote the unlawful activity of stealing plaintiff's share of the settlement proceeds.

## COUNT 14

(Unlawful financial transaction, against all defendants)

81. All defendants knew or reasonably should have known that plaintiff's share of the settlement proceeds was or would be involved in a financial

transaction that would represent the proceeds of some form of illegal activity
and/or conducted and/or participated in that financial transaction that in fact
involved the proceeds of that unlawful activity with the intent to carry on that
unlawful activity, knowing that the transaction was designed in whole or in part to
conceal or disguise the nature or the ownership or the control of plaintiff's share
of the settlement proceeds.

### COUNT 15

(Engaging in monetary transactions in money derived from unlawful activity,
against all defendants)

82.  All defendants knowingly engaged in and/or attempted to engage in the
monetary transactions that comprised settling the underlying action and disbursing
the proceeds of that settlement, and thereby engaged in those transactions that
involved criminally derived property of a value greater than $10,000 and that
money was derived from unlawful activity.

### COUNT 16

(Transportation in interstate commerce of money that was converted, against all
defendants)

83.  All defendants participated in the transmission and/or transfer in
interstate commerce of more than $5,000.00, plaintiff's share of the settlement
proceeds, knowing that the money had been, was, or would be stolen or converted.

### COUNT 17

(Receipt, possession, concealment, storing, and/or disposing of money after it was
stolen or unlawfully converted or taken, against the Eichenlaubs and Galipo)

84.  The Eichenlaubs and Galipo received, possessed, concealed, stored,
and/or disposed of the settlement proceeds, in excess of $5,000.00, knew the
proceeds to have been stolen, unlawfully converted, or taken and therefore are

liable for receipt, possession, concealment, storing, and/or disposing of money
after it was stolen, unlawfully converted, or taken.

### COUNT 18

(Conspiracy, against all defendants)

85. All defendants agreed and/or understood that they all would do, or fail
to do, all of the things set forth hereinabove and hereinbelow and in that conspired
to harm Yagman & Yagman & Reichmann, and hence plaintiff, by the breach of
contract alleged, ignoring the lien, conversion, misappropriation of money, fraud,
deceit, fraudulent conveyance, engaging in crimes that are RICO predicate acts,
and generally acting criminally, dishonestly, unethically, and reprehensibly.

86. All defendants formed and operated the conspiracy that resulted in
damage to plaintiff from the acts, as alleged hereinabove and hereinbelow, done in
furtherance of the common design and plan of the conspiracy, that continues until
this date by, among other things, the defense of the instant action.

### COUNT 19

(Civil RICO, against all defendants)

87. All defendants constitute a *de facto* enterprise, within the meaning of 18
U.S.C. 1961(4).

88. As regards the dealings alleged in the instant action, all defendants
together are an associated-in-fact enterprise, within the meaning of 18 U.S.C.
§ 1961(4).

89. The activities of all defendants affected and were accomplished by the
use of interstate commerce.

90. All defendants received income, directly and/or indirectly, by way of,
*inter alia*, profits, salary, compensation, reimbursement for expenses, *per diem*
costs reimbursements, meals, lodging, and/or travel, from the pattern of
racketeering activity alleged herein and used that income in the acquisition of an

interest in and/or operation of the enterprise, in violation of 18 U.S.C. 1962(a), and acquired and/or maintained control over said racketeering enterprise through a pattern of racketeering activities, as set forth herein, in violation of 18 U.S.C. 1962(b).

91. All defendants, being associated with said enterprise, conducted and/or participated in said enterprise's affairs through a pattern of racketeering activities, in violation of 18 U.S.C. 1962(c).

92. The pattern of racketeering activities included a continuous pattern and practice potentially involving activities, including civil RICO predicate acts whose facts are set forth hereinabove, and which acts and facts constitute elements of the following-listed federal crimes, all of which are RICO predicates:

Frauds and Swindles, 18 U.S.C. § 1341;

Mail Fraud in Aid of Racketeering, 18 U.S.C. §1952(a) (1), (3);

Money Laundering, 18 U.S.C. § 1956;

Engaging in Illegal Monetary Transactions, 18 U.S.C. § 1957;

Transportation of Stolen Money, 18 U.S.C. § 2314; and,

Sale and Receipt of Stolen Money, 18 U.S.C. § 2315.

93. The details of the alleged RICO predicate acts are that defendants committed these acts as to Yagman & Yagman & Reichmann, and hence as to plaintiff, and as to the court with respect to the alleged violation of 18 U.S.C. § 1503, as set forth hereinabove, by engaging in wrongful conduct to steal costs and fees and in fact successfully did steal costs and fees that were plaintiff's property and to defraud plaintiff of his property, and accomplished this by a series of acts.

94. All defendants engaged in numerous, discrete predicate acts, to wit: agreeing to and signing an agreement to settle the underlying action, which agreement did not take note of the contract with the Eichenlaubs and the lien that was filed for fees under that contract on April 12, 2007; issuance of a monetary

instrument to consummate the settlement, which monetary instrument did not include the names of plaintiff's prior law firm and/or plaintiff; transmission of that monetary instrument from the issuing defendants to Galipo and/or the Eichenlaubs; Galipo endorsing the monetary instrument; the Eichenlaubs endorsing that monetary instrument; Galipo depositing that monetary instrument into his attorney trust account; Galipo drawing a check to himself from that deposit; Galipo depositing the check drawn to himself into his own bank account; Galipo sending a check drawn on the settlement funds to the Eichenlaubs; Galipo sending the check to the Eichenlaubs; the Eichenlaubs endorsing the check Galipo sent to them; the Eichenlaubs depositing into their bank account(s) the check received; Galipo using the purloined funds for his own benefit; the Eichenlaubs using the purloined funds for their own benefits; approval of the settlement by Granbo, the county counsel who in fact participated in the approval, and approval by the members of the county board of supervisors.

95. The enterprises' acts have occurred on at least more than one occasion over the past 10 years and constitute at least the two acts that are RICO predicates.

96. The bad acts described in the matters enumerated hereinabove occurred over a period of time and are related in that they evidence civil RICO predicate acts, as enumerated in averment hereinabove, and presently are and also pose a threat of continued criminal activity, because they continue, have the same or similar purposes, results, participants and kinds and categories of participants, victims, methods of commission, and are otherwise interrelated by their common characteristics and are not isolated events, and each and all constitute a continuing pattern of racketeering activity and constitute a long term threat of continuing racketeering activity, that continues to the date on which this complaint will have been filed as to plaintiff.

//

97. These wrongful acts over a period of time and the bad acts alleged hereinabove enabled defendants to acquire and maintain, both directly and indirectly, interests in and control of the racketeering enterprises in which they all engage.

98. Defendants' activities led to their control and acquisition over the enterprise and resulted in the injuries to plaintiff, as alleged herein, which resulted from defendants' participation in and control of the enterprise.

99. By failing to prevent the wrongful conduct herein alleged, misconduct that amounted to racketeering activities, all managerial and/or supervisorial defendants, Granbo, the various County Counsels, and the County supervisors, engaged in and/or condoned racketeering activities, are liable on a theory of *respondeat superior*, and are vicariously liable for their agents' negligence or omissions as well as for willful omissions to fulfill the obligations of the principal.

100. The willful and/or negligent mismanagement of the enterprise with knowledge by defendants charged with management and potentially other defendants that it was and continues to be operated as a RICO enterprise, directly caused and continues to cause harm to plaintiff and his property, as alleged herein.

101. The acquisition of control of the enterprise by its participants who engaged in RICO predicate acts harmed and continues to harm plaintiff.

102. The enterprise formed by the defendants herein is an enterprise because it has a hierarchical structure and a consensual structure for making decisions, and those structures have an existence beyond that which is necessary to commit the RICO predicate acts alleged herein, in that the hierarchical and consensual structures exist to accomplish doing business, and the structures for decision-making exist separate and apart from the  racketeering activities.

//

//

103. Plaintiff was harmed in that his property, as set forth hereinabove, was subjected to, affected by, and its value affected negatively by the acts that constitute RICO predicate acts.

104. Both directly and indirectly, defendants in the acts and instances alleged herein, and others, have conducted the RICO enterprise's affairs and have, as a matter of fact, participated in the operation and *de facto* management of the RICO enterprise.

105. By the conduct alleged herein, each defendant participated in the operation and management of the RICO enterprise himself or itself and played some part in directing its affairs.

106. Plaintiff has suffered a material diminishment in the value of his property.

107. Defendants, who either are employed by or who are associated with that racketeering enterprise, have conducted that enterprise through a pattern of racketeering activities, as set forth hereinabove.

108. By virtue of the allegations set forth hereinabove, defendants were or are employed by, all defendants were or are associated with, and all defendants participated in, directly and/or indirectly, the RICO enterprise.

109. Defendants unlawfully conspired and continue to conspire, as set forth hereinabove, to violate the provisions of 18 U.S.C. 1962(b), (c), and (d) and continued and continue to do so with the aid and assistance of co-conspirators

110. Plaintiff and continues to be injured in his property by reason thereof, and plaintiff is entitled to damages, to be trebled, as to the RICO violations.

**COUNT 20**

(Violation of civil rights, against all County of Los Angeles defendants)

111. All defendants who were officers of, were employed by, and/or who were agents of the County of Los Angeles and/or the Los Angeles County

1  Counsel's Office at the times any acts alleged herein were engaged in acted under

2  color of state law and deprived plaintiff of his property and of his right to due

3  process of law and thereby violated 42 U.S.C. § 1983, all of which injured and

4  damaged plaintiff.

5      112.  All County defendants acted intentionally to enter into a settlement of

6  the underlying action that intentionally did not honor the lien and thereby deprived

7  plaintiff of his property, the non-supervisor defendants intentionally recommended

8  to the supervisor defendants that the settlement be approved by the supervisors,

9  and all County defendants intentionally paid out the settlement funds without

10 making plaintiff's prior law firm or plaintiff a payee on the monetary instrument

11 that consummated the settlement.  The supervisor defendants intentionally did not

12 scrutinize the settlement so as to ascertain that plaintiff's prior law firm and/or

13 plaintiff should have been accounted for in the settlement or intentionally decided

14 not to include those names as payees of the settlement, and this conduct caused a

15 loss of property rights to plaintiff.

16     113.  There is a practice and custom among the members of the Los Angeles

17 County Board of Supervisors of approving without appropriate consideration

18 settlements of legal actions that are recommended to it by the Los Angeles County

19 Counsel's office and that custom was a cause of money being stolen from plaintiff

20 that constitutes a constitutional violation of deprivation of property without due

21 process of law.

22     **WHEREFORE**, plaintiff requests relief against defendants, and each of

23 them, as follows:

24     1.  General damages of more than $75,000.00, according to proof, exclusive

25 of interest and costs;

26

27     2.  Punitive damages of $100,000.00;

28     3.  Damages according to proof on the civil RICO claims, to be trebled;

4. Imposition of a constructive trust;

5. An accounting of all settlement funds paid to all persons by all persons;

6. Costs of suit;

7. Attorneys' fees;

8. Interest; and,

9. Such other relief as is just and proper.

_____
**STEPHEN YAGMAN**

**JURY DEMAND**

Plaintiff demands trial by jury of all issues.

_____
**STEPHEN YAGMAN**

//

# CERTIFICATE OF SERVICE

On March 26, 2013, I served by mail on all defendants the Third Amended Complaint by placing one in an envelope with correct postage thereon fully prepaid and then mailing the envelopes to defense counsel, whose addresses are listed below.  I declare the foregoing to be true under penalty of perjury at Los Angeles, California on March 26, 2013.


STEPHEN YAGMAN

Thomas Hurrell
Ste.  900, 700 S.  Flower St.
L.A., CA 90017
(Attorney for all Los Angeles County defendants,
Including Gonzales)

David Wilson
15th Floor, 801 S.  Figueroa St.
L.A., CA 90017
(Attorney for all Manning defendants, including
Grimm)

Dale Galipo
Ste. 310, 21800 Burbank Blvd.
Woodland Hills, CA 91367
(Attorney for defendants Galipo and both Eichenlaubs)